# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ANTONIO TECSON, ET AL.,**<br>Plaintiffs**,**<br>vs.<br>**LYFT, INC.,**<br>Defendant**.** | CASE NO. 18-cv-06782-YGR<br><br>**ORDER DENYING MOTION TO RELATE**<br>Re: Dkt. No. 20 |

Plaintiff Antonio Tecson brings this putative class action against defendants Lyft, Inc. ("Lyft") and Does 1 through 10 for alleged violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. (Dkt. No. 1-1 ("Compl.") ¶¶ 1–2.) Tecson alleges Lyft contacted him and putative class members on their cell phones without authorization. (*Id.* ¶ 2.) In a separate case, plaintiff Anthony A. Oliver brings a putative class action against defendant Lyft, also pursuant to Section 227 of TCPA, alleging that Lyft contacted former drivers on their cell phones after they had withdrawn their consent to be contacted. (Case No. 19-cv-01488-WHA, Dkt. No. 1 ("Oliver Compl.").)

Now before this Court is plaintiff Oliver's motion to relate the two actions. (Dkt. No. 20 ("Motion").) Having carefully considered the pleadings and the papers submitted, and for the reasons set forth more fully below, the Court hereby **DENIES** the motion to relate.

**I.    BACKGROUND**

**A.    Procedural Background**

On September 26, 2018, Tecson filed a putative class action complaint against Lyft and Does 1 through 10 in the Superior Court of California for violation of the TCPA. (Compl.) Lyft later removed this action to federal court on November 8, 2018. (Dkt. No. 1.)

On March 27, 2019, plaintiff in another case, *Oliver v. Lyft*, No. 19-cv-01488-WHA (N.D. Cal.) ("Oliver Action"), filed a motion to relate the two actions, based on the assertion that both

cases are putative class actions brought against Lyft pursuant to Section 227 of the TCPA for alleging that Lyft sent unsolicited text messages in violation thereof. (Motion.)

Defendants opposed the motion, arguing that (i) Oliver has brought numerous vexatious litigations against Lyft, including the Oliver Action; (ii) the instant action and the Oliver Action involve different parties, transactions, and events; and (iii) their judgments do not bear any risk of duplication or conflicting results.[1] (Dkt. No. 23 ("Opposition").)

**B. Factual Allegations of Cases At Issue**

**1.** *Tecson v. Lyft*

Tecson avers that he received three unsolicited text messages from Lyft aimed at recruiting him to become a driver. (Compl. ¶¶ 10–11.) Tecson received the text messages on his cell phone in early 2018, stating: (1) "Lyft is looking for 3 more drivers in your area! $37/hour, $250 bonus. Visit: http ://wk4u.co/EumTos (Reply STOP to cancel)," (2) "Lyft is looking for 3 more drivers in your area! $37/hour, $250 bonus. Visit: http://wk4u.co/onfspv (Reply STOP to cancel)[,]" and (3) a "third similar text message that referred to a $300 bonus and that directed him to the following link: http://wk4u.co/FXTFV1." (*Id*. ¶ 10.) The text messages were sent without a clear emergency purpose. (*Id*. ¶ 11.) The three links provided in the texts redirect to an identical driver-recruitment webpage. (*See* Dkt. No. 1-1 ECF 14–16; Dkt. No. 1-1 ECF 17–19; Dkt. No. 1-1 ECF 20–22.)

Tecson alleges that either: (1) defendants sent the text messages and were responsible for both the content and delivery of the messages; or (2) one of the defendants sent the text messages acting at the direction of the other defendants with the other defendants' full knowledge and

---

[1] In connection with its opposition, Lyft requests that the Court take judicial notice of eleven documents. (Dkt. No. 22.) Specifically, Lyft requests that the Court take judicial notice of nine federal district filings and one order pertaining to Oliver's previous litigations with Lyft, as well as the complaint and order denying motion to relate cases from the Oliver Action. (Dkt. Nos. 22-1, 22-2, 22-3, 22-4, 22-5, 22-6, 22-7, 22-8, 22-9, 22-10, 22-11.) The federal court records have been filed with the Northern District of California and the Southern District of Georgia and are maintained on the court's website. Accordingly, the Court **GRANTS** Lyft's request as it applies to the public court records. *See Lee v. City of L.A.*, 250 F.3d 668, 688-89 (9th Cir. 2001) (noting "a court may take judicial notice of matters of public record" and documents whose "authenticity . . . is not contested" and upon which a plaintiff's complaint relies) (internal quotation marks omitted) (alterations in original).

consent and to the benefit of all defendants. (Compl. ¶ 12.) Tecson alleges that he never gave his consent to defendants, or anyone acting on their behalf, to use his cell phone number for job-recruitment purposes. (*Id*.)

Tecson further pleads that defendants stored his cell phone number, along with thousands of other cell phone numbers, in a database that they maintained. (*Id*. ¶ 14.) The defendants then sent the above-referenced text messages, and similar text messages, to the numbers stored in the database using automated dialing equipment. (*Id*. ¶ 14–15.) Finally, Tecson alleges defendants sent these text messages with no regard for whether they had consent to do so. (*Id*. ¶ 15.)

### 2. *Oliver v. Lyft*

On March 21, 2019, Oliver filed a putative class action complaint against Lyft in the Northern District of California for a violation of Section 227 of the TCPA. (Oliver Compl.)

Oliver alleges that defendant repeatedly sent unauthorized text messages to the cell phone numbers of *former* drivers, despite requests to discontinue such text messages. (*Id*. ¶ 14.) Oliver avers defendant terminated Oliver and revoked his status as an authorized driver for Lyft in or about October 2018. (*Id*. ¶ 15.) Oliver asserts that, despite the termination, defendant continued to send Oliver text messages about his Lyft account, "including text messages about local Lyft sponsored events and other messages promoting Lyft's mobile application." (*Id*.)

He claims that on multiple occasions he texted Lyft back, stating "stop" and "I am withdrawing consent to these messages." (*Id*. ¶ 16.) For example, Oliver states that after he texted "stop" to Lyft on or about November 4, 2018, Oliver received a promotional text message stating "Next week's Lyft streak bonus hours are now in the app. Pick any times that work for you and give back-to-back rides to earn more. http://lft.to/streaks[.]"[2] (*Id*. ¶ 17.)

On December 12, 2018, Lyft sent the Oliver another text message stating, "We're making it easier for you to keep your rating high, plus more improvements to keep you supported and safe http://www.lyft.com/driver/driver-by-you#support[.]" (*Id*. ¶ 19.)

Finally, Oliver alleges that defendant was on notice that Oliver opted out of receiving text

---

[2] The Court notes there are discrepancies in the complaint about the dates of the text message between Oliver and Lyft.

United States District Court
Northern District of California

1 messages, yet defendant continued to annoy Oliver by sending text messages to his cell phone. (*Id.* ¶ 21.) These included unauthorized promotional text messages using an automatic telephone dialing system to the cell phone numbers of Oliver and other putative class members and the putative class members communicated to defendant that they did not give consent to send such messages. (*Id.* ¶ 31.) The text messages were sent *en masse* to lists of phone numbers using automated dialing equipment. (*Id.* ¶ 32.)

## II. ANALYSIS

An action is related to another when (1) the actions concern substantially the same parties, property, transaction, or event; and (2) it appears likely that there will be an unduly burdensome duplication of labor and expense or conflicting results if the cases are conducted before different judges. Civ. L.R. 3-12(a). The local rules require the party filing an administrative motion to consider whether cases should be related to serve a copy of the motion and proof of service on all known parties to each apparently related action. Civ. L.R. 3-12(b).[3]

Oliver argues that both cases concern TCPA violations against Lyft for text messages sent without recipients' consent, so they pose common questions of law and fact. (Reply at 3.) However, these parallels do not suffice to meet the substantial similarity threshold. *See e.g. Nozolino v. Hartford Life & Acc. Ins. Co.,* No. 12-CV-04314-JST, 2013 WL 2468350, at *1 (N.D. Cal. June 7, 2013) (denying motion to relate cases even though both cases involve ERISA claims and the same defendant); *Univ. of California v. Eli Lilly & Co.*, No. C-90-0373-DLJ (JSB), 1991 WL 332056, at *10 (N.D. Cal. Nov. 4, 1991) (denying motion to relate cases even though both cases involve the same plaintiff and defendant, the same basic recombinant DNA technology, and many of the same researchers).

The putative classes in each case would likely be significantly different, if not wholly separate from each other. The Oliver Action concerns former Lyft drivers who allegedly

---

[3] Oliver did not file a proof of service with his motion to show that he served all known parties as required by Local Rule 3-12(b), but defendant did not raise the issue in its Opposition, so the Court will review the motion on its merits. *See* Civ. L.R. 5-5(b) ("Failure to provide an acknowledgment or certificate of service shall not be a ground for the Clerk to refuse to file a paper or pleading. However, any such document may be disregarded by the Judge if an adverse party timely objects on the ground of lack of service.").

4

withdrew consent to receive text messages, while the instant action concerns individuals, including non-drivers, who allegedly never consented to receiving driver-recruitment text messages. Even if there was some overlap between classes, the operative facts for the putative classes would still make them substantially different. *See Ortiz v. CVS Caremark Corp.*, No. C-12-05859(EDL), 2013 WL 12175002, at *2 (N.D. Cal. Oct. 15, 2013) (denying motion to relate cases because one class was made up of all California CVS pharmacy employees, exempt and non-exempt, and the other class was made up of all California non-exempt CVS employees because "the limited overlap of some class members is not enough to reach the 'substantial similarity' threshold").[4] In these cases, the factual inquiries for each putative class would be unique because the class putative members have different relationships with Lyft. The transactions pertaining to the cases would also differ because the instant action focuses on whether people gave consent to receive driver-recruitment text messages while the Oliver Action focuses on whether former drivers rescinded their consent to receive text messages about promotional deals for Lyft drivers. The ties Oliver presents do not suffice to find that the actions concern substantially the same parties, property, transaction, or event.

Additionally, the Court is not persuaded that there will be an unduly burdensome duplication or conflicting results. The instant action and the Oliver Action involve different facts and claims so the judge in each case would be focused on resolving separate issues of law and fact for different parties.[5] The rulings in each case would not interfere with one another.

//

---

[4] *Cf. In re Facebook Privacy Litig.*, No. C 10-02389-JW, 2010 WL 5387616, at *1 (N.D. Cal. Dec. 21, 2010) (granted a motion to relate cases because cases were substantially similar due to both cases having the same defendant and "overlapping classes[,]" along with "overlapping causes of action and factual inquiries.").

[5] Oliver cited to *Batazzi v. Petroleum Helicopters, Inc.*, 664 F.2d 49, 50 (5th Cir. 1981) and *Central Motor Co. v. United States*, 583 F.2d 470 (10th Cir. 1978) to support his proposition that "[e]ven if there are some questions that are not common, relation is not precluded." (Reply at 3.) While true, given the context here, those cases do not persuade.

## I. CONCLUSION

For the foregoing reasons, the Court **DENIES** Oliver's motion to relate.

**IT IS SO ORDERED.**

Dated: April 29, 2019

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**